**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) )  ) Chapter 11 ) |
| Crucible Industries LLC,[1] | ) ) Case No. 24-31059 (WAK) ) |
| Debtor. | ) ) ) |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE PROPOSED BREAK-UP EXPENSE FEE**

The Official Committee of Unsecured Creditors of Crucible Industries, LLC (the "Committee"), through its undersigned counsel, respectively objects to the terms of the Break-Up Expense Fee (as defined in Sale Motion) that was the subject to further Court order under the Court's order approving bidding procedures, setting a deadline to submit competing bids for the Debtor's assets, and scheduling an auction (if necessary) and sale hearing [Docket No. 56] (the "Bidding Procedures Order") and hereby states as follows:

**BACKGROUND**

1. On December 12, 2024 (the "Petition Date"), Crucible Industries LLC, the above-captioned debtor and debtor in possession ("Crucible" or, the "Debtor") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), with the United States Bankruptcy Court for the Northern District of New York (the "Court"), commencing the Debtor's chapter 11 case (this "Chapter 11 Case"). The Debtor continues to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On January 3, 2025, the United States Trustee appointed an official committee

---

[1] The last four digits of the Debtor's federal tax identification number are (9794).

1

of unsecured creditors. No request for a trustee or examiner has been made in this Chapter 11 Case.

2.	On December 12, 2024, the Debtor filed its *Motion for Entry of Orders: (A)(I) Approving Bidding Procedures in Connection with the Proposed Sale of Substantially All of the Debtor's Assets, (II) Scheduling an Auction and Hearing to Consider the Sale, (III) Approving the Form and Manner of Notice Thereof, and (IV) Approving Stalking Horse Asset Purchase Agreement; (B)(I) Authorizing and Approving the Sale of Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, and (II) Authorizing and Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (C) Granting Related Relief* [Docket No. 13] (the "Sale Motion");[2]

3.	As part of the Sale Motion, among other bidding and sale procedures, the Debtor sought approval of certain bid protections for the Stalking Horse Purchaser, including a break-up fee of $520,460.00 (the "Break-Up Expense Fee"), whose terms are more fully described in Section 9.02(d) of the Stalking Horse APA.

4.	On December 20, 2024, the Court entered the Bid Procedures Order, which among other things, set a bid deadline for January 30, 2025, scheduled an auction for February 4, 2025, and scheduled a sale hearing for February 6, 2025, but specifically refrained from approving the Break-Up Expense Fee.

**ARGUMENT**

5.	Break-up fees and expense reimbursements are a normal and, in many cases necessary components of significant sales conducted under the section 363 of the Bankruptcy Code. However, break-up fees are only appropriate when the proposed fee is necessary to encourage a competitive auction process, and the fee is reasonable in light of the circumstances.

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Sale Motion.

2

6. Bankruptcy courts typically consider the propriety of break-up fees in the section 363 sale process under the "business judgment rule," and such arrangements are presumptively valid provided that (i) a debtor's decision to agree to a break-up fee is not tainted by bad faith or self-dealing, (ii) the break-up fee does not hamper bidding, and (iii) the amount of the break-up fee is reasonable. *See In re Integrated Resources, Inc.*, 147 B.R. 650 at 656-57 (S.D.N.Y. 1992) (approving a 1.6% breakup fee).

7. The Committee objects to both the amount of the Break-Up Expense Fee and the terms under which it must be paid. As an initial matter, the Break-Up Expense Fee is too high. Notwithstanding the $17,348,654.25 face amount of the Purchase Price under the Stalking Horse APA, because the cash consideration will be adjusted based on the inventory and accounts receivable at closing, the Debtor estimates that the adjusted purchase price at closing will be in the range of $11 to $12 million. *See Sale Motion*, at footnote 3 and paragraph 14(h). At that price, the Break-Up Expense Fee is approximately 4.3% to 4.7% of the purchase price and is at the highest end of the typical 1% to 5% range of breakup fees.

8. The Committee and the Debtor should be aligned in desiring a competitive auction process that encourages parties to submit bids. Requiring potential bidders to outbid the Stalking Horse Purchaser by more than $500,000 with each bid unnecessarily discourages participation and hampers bidding. The Committee recognizes that the Stalking Horse Purchaser should get some benefit for serving as the floor bid and being that binding offer that allowed the Debtor to proceed with this process, however, the Committee believes that a break-up fee in the 2% to 3% range would be more appropriate under the facts and circumstances in this case.

9. There is nothing about the proposed transaction that warrants a higher break-up fee. The proposed transaction with the Stalking Horse is neither complex nor risky. The offer under

3

the Stalking Horse APA is not for a going concern sale of the Debtor's assets, but a liquidation. The Stalking Horse Purchaser does not intend to operate in the Debtor's business location but rather will remove the purchased assets and transfer them elsewhere. It is not clear that the Stalking Horse Purchase will use any of the assets other than the Debtor's valuable intellectual property in its operations. Lowering the Break-Up Expense Fee to $250,000 would both properly recognize the Stalking Horse Purchaser's contributions to this sale process and not discourage bidders from participating and potentially submitting an offer to buy all the Debtor's assets and to continue operations at the location, saving the jobs this community would otherwise lose.

10. Moreover, the Committee believes that that the Debtor and its estate's obligation to pay the Break-Up Fee Expense should be limited to the closing of an alternative sale transaction and paid from the proceeds of the alternative transaction. As currently drafted, should the Court approve the Break-Up Fee Expense that is contained in the Stalking Horse APA, in addition to the closing of an alternative transaction to a successful bidder following the auction, the Break-Up Fee Expense must be paid (a) if the Debtor is in material breach of the agreement under Section 9.01(b)(i); (b) if the Court enters an order denying the approval of the sale to the Stalking Horse Purchaser under Section 9.01(b)(iii); or (c) if the governing body of the Debtor resolves to approve any Alternate Transaction under Section 9.01(b)(iv) (collective, the "Non-Sale Payment Triggers"). *See* Stalking Horse APA, Section 9.02(d). Under Section 9.02(d), under each of these circumstances, the Break-Up Expense Fee is payable within three business days of the triggering event.

11. Payment of the Break-Up Expense Fee should only be permitted and required after an alternative sale transaction closes, and those sale proceeds are available to pay it. Until an alternative sale closes, the Debtor will not recognize the benefit of the Stalking Horse APA, and

4

the Break-Up Expense Fee will not have conferred a benefit to the estate. Moreover, the Debtor does not have sufficient funds to pay the Break-Up Expense Fee in the event of any of the Non-Sale Payment Triggers. Payment of the Break-Up Expense Fee should not be permitted for any of the Non-Sale Payment Triggers, and the Committee objects to paying the Break-Up Expense Fee at any time other than after the closing of an alternative sale transaction.

12. For the reasons described above, the amount and terms of the Break-Up Expense Fee as contemplated by the Stalking Horse APA should be rejected as unreasonable and inappropriate under the current circumstances. The Break-Up Expense Fee should be reduced to $250,000 and should only be payable after the closing of an alternative sale transaction.

WHEREFORE, the Committee respectfully requests that the Court not approve the Break-Up Expanse Fee and grant such other and further relief as it may deem just and proper.

Dated: January 14, 2025

        Respectfully submitted,

        BERNSTEIN-BURKLEY, P.C.

        */s/ Robert S. Bernstein*
        Robert S. Bernstein, Esq. (NY ID 565946)
        Kirk B. Burkley, Esq., (PA ID 89511)
        601 Grant Street, 9th Floor
        Pittsburg, PA 15219
        Telephone: (412) 456-8100
        Facsimile: (412) 456-8135
        rbernstein@bernsteinlaw.com
        kburkley@bernsteinlaw.com

        and

        Robert M. Stefancin, Esq. (OH ID 0047184)
        Gus Kallergis, Esq.  (OH ID 0071557)
        1360 East Ninth Street
        Suite 1250 Cleveland, OH 44114
        Telephone: (412) 456-8100
        Facsimile: (412) 456-8135
        rstefancin@bernsteinlaw.com
        gkallergis@bernsteinlaw.com

        *Proposed Attorneys for the Committee*