So Ordered.

Signed this 6 day of March, 2025.




_____

Wendy A. Kinsella
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Crucible Industries LLC,[1] | Case No. 24-31059 (WAK) |
| Debtor. | |

**ORDER PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE APPROVING THE SALE OF LOT 1 ASSETS, FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS**

Upon the motion [Docket No. 13] (the "Sale Motion"), filed by Crucible Industries LLC (the "Debtor"), for entry of an order (this "Order") approving the sale of the Lot 1 Assets to EraSteel Inc. ("EraSteel", or the "Stalking Horse Purchaser"), free and clear of liens, claims encumbrances and interests; and the Court having entered orders on December 20, 2024 and January 21, 2025 [Docket Nos. 56 and 144] (collectively, the "Bidding Procedures Order")[2]

---

[1] The last four digits of the Debtor's federal tax identification number are (9794).

[2] Capitalized terms used, but not defined herein, shall have the same meaning ascribed to such terms in the Sale Motion and/or Bidding Procedures Order, as applicable.

21143384.v2

approving certain bidding procedures for the sale of the Purchased Assets, among other relief; and the Stalking Horse Purchaser having submitted the only Qualified Bid for the Lot 1 Assets as set forth in the Stalking Horse APA that was approved by the Court pursuant to the Bidding Procedures Order; and a hearing to approve the sale of the Lot 1 Assets having been held on February 25, 2025 (the "Sale Hearing"); and all interested parties having been afforded an adequate opportunity to be heard; and the Court having reviewed and considered the Sale Motion, all objections and responses thereto, and the arguments of counsel made and the evidence presented at the Sale Hearing; and it appearing that the relief requested in the Sale Motion with respect to the sale of the Lot 1 Assets to the Stalking Horse Purchaser is in the best interests of the Debtor, its estate, and its creditors; and upon the record of the Sale Hearing and the Debtor's chapter 11 case (the "Chapter 11 Case"); and after due deliberation thereon; and good cause appearing therefor;

**IT IS HEREBY FOUND AND DETERMINED THAT:**[3]

A. This Court has jurisdiction and authority to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this Chapter 11 Case and the Sale Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B. The statutory predicates for the relief sought herein are sections 105 and 363 of title 11 of the United States Code (11 U.S.C. § 101 *et seq*., the "Bankruptcy Code"), and Rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

---

[3] The findings of fact and conclusions of law set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to these proceedings by Bankruptcy Rule 9014. To the extent any of the following findings constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C. This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Time is of the essence in effectuating the Stalking Horse APA and proceeding with the sale of the Lot 1 Assets. The Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs that the stay contemplated by Bankruptcy Rule 6004(h) is hereby vacated to any extent necessary to permit the immediate effectiveness of this Order. This Order shall be effective immediately upon its entry and the parties may consummate the transactions contemplated in the Stalking Horse APA immediately upon entry of this Order.

D. Proper, timely, adequate and sufficient notice of the Sale Motion, the Bid Deadline, and the Sale Hearing has been provided in accordance with the terms of the Bidding Procedures Order and Bankruptcy Code sections 102(1) and 363(b) and Bankruptcy Rules 2002, 6004, 9006, 9007 and 9014 to all persons and entities entitled to such notice. No other or further notice of the Sale Motion, the Sale Hearing, or the entry of this Order is necessary or shall be required.

E. A reasonable opportunity to object or be heard regarding the relief set forth herein has been afforded to all interested persons and entities.

F. The Debtor's solicitation of competing Qualified Bids for the Lot 1 Assets was non-collusive, fair and reasonable, and conducted in good faith within the meaning of section 363(m) of the Bankruptcy Code. The Stalking Horse Purchaser acted in good faith in all respects of its participation in the bidding process. Neither the Debtor nor the Stalking Horse Purchaser have engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code or cause the application of, or implicate, section 363(n) of the Bankruptcy Code to the consummation of the sale of the Lot 1 Assets. The Bidding Procedures afforded a full, fair and reasonable opportunity for any Qualified Bidder to make an offer for the Lot 1 Assets.

G. The purchase price to be paid by the Stalking Horse Purchaser under the Stalking Horse APA represents a fair and reasonable offer to purchase the Lot 1 Assets under the facts and circumstances of the Chapter 11 Case, and the form and total consideration to be realized by the Debtor pursuant to the Stalking Horse APA constitute fair market value. Approval of the Stalking Horse APA and the consummation of the transactions contemplated therein is in the best interests of the Debtor, its creditors, its estate, and all other parties in interest.

H. The Debtor has articulated a sufficient business justification under the standard set forth in *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983), and has otherwise demonstrated a sufficient basis and the existence of compelling circumstances requiring it to sell the Lot 1 Assets as contemplated in the Sale Motion and the terms set forth herein. Such an action is an appropriate exercise of the Debtor's reasonable business judgment and is in the best interests of the Debtor, its creditors, and its estate.

I. The Stalking Horse Purchaser, the Debtor and their respective professionals have complied with the Bidding Procedures Order in all material respects and in good faith.

J. The offer of the Stalking Horse Purchaser and the total consideration to be realized by the Debtor pursuant to the Stalking Horse APA: (i) is the highest and best offer received by the Debtor for the Lot 1 Assets; (ii) is fair and reasonable; and (iii) is in the best interests of the Debtor, its creditors and its estate. The Debtor's determination that the Stalking Horse Purchaser's offer constitutes the highest and best offer for the Lot 1 Assets constitutes a valid and sound exercise of the Debtor's reasonable business judgment.

K. The Stalking Horse APA was negotiated and entered into in good faith, based upon arm's-length negotiations and without collusion or fraud of any kind. The purchase price to be paid by the Stalking Horse Purchaser was not controlled by an agreement among potential bidders.

Neither the Stalking Horse Purchaser nor any of its affiliates, officers, directors, managers, shareholders, or any of their respective successors or assigns is an "insider" of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code.

L. The Stalking Horse Purchaser would not have entered into the Stalking Horse APA and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtor, its estate, and its creditors, if the sale of the Lot 1 Assets were not free and clear of all liens, claims, encumbrances and interests of any kind or nature whatsoever to the greatest extent permitted under sections 105(a) and 363 of the Bankruptcy Code and other applicable law, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, recorded or unrecorded, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, noticed or unnoticed, perfected or unperfected, allowed or disallowed, disputed or undisputed, whether accruing prior to or subsequent to the commencement of the Case, whether imposed by agreement, understanding, law, equity or otherwise.

M. The Debtor may sell the Lot 1 Assets free and clear of all such liens, claims, encumbrances and interests of any kind or nature whatsoever, to the greatest extent permitted under sections 105 and 363 of the Bankruptcy Code and other applicable law because, in each case, one or more of the standards set forth in Bankruptcy Code section 363(f) has been satisfied. Accordingly, except as otherwise set forth herein, all persons shall be forever barred, estopped, and permanently enjoined from pursuing or asserting such liens, claims, encumbrances or interests against the Lot 1 Assets, the Stalking Horse Purchaser, or any of its assets, property, successors, or assigns.

5

21143384.v2

N.      The sale of the Lot 1 Assets to the Stalking Horse Purchaser shall be a legal, valid and effective transfer and shall vest the Purchaser with all right, title and interest in and to the Lot 1 Assets.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Sale Motion is GRANTED, as set forth herein with respect to the Lot 1 Assets.

2.      All objections to the relief granted herein that have not been withdrawn, waived or settled, and all reservations of rights included therein, are overruled on the merits.

3.      Notice of the Sale Motion and the Sale Hearing was fair and adequate under the circumstances and complied in all respects with 11 U.S.C. § 102(1) and Bankruptcy Rules 2002, 6004, 9006, 9007 and 9014.

4.      The Stalking Horse Purchaser is the Successful Bidder for the Lot 1 Assets, and the Stalking Horse APA is approved in its entirety. The sale of the Lot 1 Asset to the Stalking Horse Purchaser, as contemplated in the Sale Motion and Stalking Horse APA, is approved pursuant to sections 105(a) and 363 of the Bankruptcy Code. The Debtor and its officers, directors, employees and agents are hereby authorized to take such actions as are necessary to consummate the sale of the Lot 1 Assets as contemplated in the Stalking Horse APA, and in connection therewith, are hereby authorized to execute and deliver any agreements, instruments and documents that may be necessary to implement and effectuate the provisions of this Order and the transactions approved hereby and to take all such further actions as the Debtor may in its discretion deem reasonable and

beneficial to facilitate the sale of the Lot 1 Assets to the Stalking Horse Purchaser, all without further order of this Court.

5. Pursuant to sections 105(a), 363(b) and 363(f) of the Bankruptcy Code, and except as otherwise provided herein, the Lot 1 Assets shall be transferred to the Stalking Horse Purchaser free and clear of all liens, claims, encumbrances and interests of any kind or nature whatsoever and all such liens, claims, encumbrances and interests shall attach to the net cash proceeds of the sale received by the Debtor in the order of their priority, and with the same validity, force and effect that they now have as against the Lot 1 Assets, subject to any claims and defenses the Debtor or any other party may possess with respect thereto. Notwithstanding the foregoing, in accordance with paragraphs 8 and 28 of the *Order (i) Authorizing the Debtor, on a Final Basis, to (a) Obtain Postpetition Financing and (b) Use Cash Collateral, (ii) Granting Liens and Providing Superpriority Administrative Expense Claims to Lender, (iii) Granting Adequate Protection to Lender, (iv) Modifying the Automatic Stay, (v) and Granting Related Relief, Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507* [Docket No. 145] (the "Final DIP Order"), and the terms of the DIP Credit Agreement (as defined in the Final DIP Order), all proceeds from the sale of the Lot 1 Assets shall be paid over to KeyBank National Association and applied first to the payment of the DIP Obligations, until repaid in full, and second to the Pre-Petition Obligations, until repaid in full.

6. Except to the extent otherwise provided in the Stalking Horse APA, the Stalking Horse Purchaser shall not be liable or obligated for any liabilities or obligations of the Debtor or its estate. All persons or entities holding liens, claims, encumbrances or interests of any kind or nature with respect to the Lot 1 Assets are hereby barred, estopped, and permanently enjoined from asserting, prosecuting or otherwise pursuing such liens, claims, encumbrances or interests against

the Stalking Horse Purchaser, its successors or assigns, or the Lot 1 Assets. This Order is and shall be effective as a determination that all such liens, claims, encumbrances and interests shall be, and are, without further action by any person or entity, released with respect to the Lot 1 Assets as of the date they are sold to the Stalking Horse Purchaser.

7. If any person or entity that has filed financing statements, mortgages, mechanics' liens, lis pendens or other documents or agreements evidencing any lien, claim, encumbrance or interest in the Lot 1 Assets (except with respect to any Assumed Liabilities as set forth in the Stalking Horse APA) shall not have delivered to the Debtor prior to closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction or other releases of such lien, claim, encumbrance or interest, then, only with regard to the Lot 1 Assets being acquired by the Stalking Horse Purchaser pursuant to the Stalking Horse APA and this Sale Order, the Buyer is hereby authorized to file, register or otherwise record a certified copy of this Sale Order (and file any UCC-3 termination statements) which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of such Claims. This Sale Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state or local government agency, department or office.

8. Each and every federal, state and local government agency or department and all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds and other similar persons are hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Stalking Horse APA and this Order.

9. The Stalking Horse Purchaser is purchasing the Lot 1 Assets in good faith and is therefore entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code, including, without limitation, in the event that this Order is modified or reversed on appeal.

10. The provisions of 11 U.S.C. § 363(n) have not been violated, and the transfer of the Lot 1 Assets shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and all other applicable law and no damages may be assessed against the Stalking Horse Purchaser or any other party pursuant to section 363(n) of the Bankruptcy Code.

11. The provisions of Bankruptcy Rule 6004(h) shall not apply to stay consummation of the transactions contemplated by the Stalking Horse APA, and the Debtor and the Stalking Horse Purchaser are hereby authorized to consummate such transactions upon entry of this Order.

12. This Order shall be binding in all respects upon the Stalking Horse Purchaser (together with its directors, officers, principals, affiliates, successors and assigns), the Debtor, all creditors of and holders of equity interests in the Debtor (whether known or unknown), any holders of liens, claims, encumbrances or interests in the Lot 1 Assets, all parties in interest in this Chapter 11 Case, and any subsequent trustees appointed in the Chapter 11 Case or upon a conversion to chapter 7 under the Bankruptcy Code.

13. Nothing in this Order or the Stalking Horse APA releases, nullifies, precludes, or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as the post-sale owner or operator of property after the date of entry of this Order provided, however, that the Buyer shall not assume any liability to a Governmental Unit for penalties for days of violation prior to closing of the sale. Nothing in this Order or the Stalking Horse APA authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c)

21143384.v2

registration, (d) authorization, or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law. Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order.

14. Any materials at the Debtor's facility related to FRC Global that (i) are in their original packaging and have not been removed from their shipping pallets, and (ii) have not been invoiced to the Debtor, shall not be included in the Lot 1 Assets to be sold to the Stalking Horse Purchaser and all rights (if any) of FRC Global and the Debtor with respect to such materials are hereby preserved.

15. The Lot 1 Assets to be sold to the Stalking Horse Purchaser shall not include, nor shall there be any assumption or assignment of, that certain workers compensation insurance policy (policy no. XXXXXX8115) issued by North River, effective 10/23/24 through 10/23/25.

16. The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to implement the terms and provisions of this Order.

17. This Court shall retain jurisdiction to adjudicate any dispute, issue, or other matter arising in connection with the sale of the Lot 1 Assets or the implementation of this Order.

18. Any appeal seeking to enjoin or stay consummation of the sale of the Lot 1 Assets shall be subject to the appellant depositing or posting a bond in an amount equal to the purchase price to be paid by the Stalking Horse Purchaser pursuant to the Stalking Horse APA (without adjustment), pending the outcome of the appeal.

19. Pursuant to the *Order Authorizing the Employment and Retention of Calibre Group LLC as the Asset Sale Advisor to the Debtor* [Docket No. 155] (the "Calibre Retention Order"), the Debtor is authorized to pay Calibre Group LLC from the proceeds of the Sale Transaction, a

Sale Bonus (as such term is defined in the Calibre Retention Order) in the amount of $500,000, less any Monthly Payments and Prepetition Retainer Payment previously paid to Calibre, without further order of the Court.

20. The Debtor is authorized and empowered to take all actions necessary to effectuate the relief granted pursuant to this Order.

# # #

21143384.v2