So Ordered.

Signed this 12 day of March, 2025.



_____

Wendy A. Kinsella

United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) |
| | ) Chapter 11 |
| | ) |
| Crucible Industries LLC,[1] | ) Case No. 24-31059 (WAK) |
| | ) |
| Debtor. | ) |
| | ) |

**ORDER PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE APPROVING THE SALE OF LOT 2 ASSETS, FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS**

Upon consideration of the motion filed by Crucible Industries LLC, the above-captioned debtor and debtor in possession ("Crucible" or, the "Debtor"), for entry of orders (a)(i) approving bidding procedures in connection with the sale, in one or more lots, of substantially all of the Debtor's assets; (ii) scheduling an auction and a hearing to consider the sale; (iii) approving the form and manner of notice thereof; and (iv) approving the terms of the Stalking Horse Asset Purchase Agreement; (b)(i) authorizing and approving the sale of assets free and clear of liens,

---

[1] The last four digits of the Debtor's federal tax identification number are (9794).

21219393.v5

claims, encumbrances, and interests, and (ii) authorizing and approving the assumption and assignment of executory contracts and unexpired leases; and (c) granting related relief [Docket No. 13] (the "Sale Motion"); and the Court having entered orders on December 20, 2024 and January 21, 2025 [Docket Nos. 56 and 144] (collectively, the "Bidding Procedures Order")[1] approving certain bidding procedures for the sale of the Purchased Assets, among other relief; and the Debtor having received multiple Qualified Bids for the Lot 2 Assets, including from Lauter Metal Technologies LLC ("Lauter"), and Myron Bowling Auctioneers, Inc. and Cincinnati Industrial Auctioneers, Inc. ("CIA"), among other Qualified Bidders; and the Debtor having held an Auction of the Lot 2 Assets on February 21 and 24, 2025; and Lauter having been determined to have submitted the highest or otherwise best bid for the Lot 2 Assets at the Auction pursuant to the terms of that certain Asset Purchase Agreement dated February 27, 2025 between the Debtor and Lauter (the "Asset Purchase Agreement") attached hereto as ***Exhibit A***; and CIA having been determined to have submitted the next highest or otherwise best bid for the Lot 2 Assets at the Auction pursuant the terms of that certain Asset Purchase Agreement between the Debtor and CIA (the "Back-Up Asset Purchase Agreement"), attached as Exhibit C to the *Supplemental Notice of Determination of Successful Bidder and Back-Up Bidder for Lot 2 Assets* [Docket No. 211]; and a hearing to approve the sale of the Lot 2 Assets having been held on February 27, 2025 (the "Sale Hearing"); and all interested parties having been afforded an adequate opportunity to be heard; and the Court having reviewed and considered the Sale Motion, all objections and responses thereto, and the arguments of counsel made and the evidence presented at the Sale Hearing; and it appearing that the relief requested in the Sale Motion with respect to the sale of the Lot 2 Assets and the assumption and assignment of the executory contracts and unexpired leases identified on

---

[1] Capitalized terms used, but not defined herein, shall have the same meaning ascribed to such terms in the Sale Motion and/or Bidding Procedures Order, as applicable.

Schedule 2.01(g) to the Asset Purchase Agreement (the "Assigned Contracts") to Lauter is in the best interests of the Debtor, its estate, and its creditors; and upon the record of the Sale Hearing and the Debtor's chapter 11 case (the "Chapter 11 Case"); and after due deliberation thereon; and good cause appearing therefor;

**IT IS HEREBY FOUND AND DETERMINED THAT:[2]**

A. This Court has jurisdiction and authority to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this Chapter 11 Case and the Sale Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B. The statutory predicates for the relief sought herein are sections 105 and 363 of title 11 of the United States Code (11 U.S.C. § 101 *et seq*., the "Bankruptcy Code"), and Rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

C. This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Time is of the essence in effectuating the Asset Purchase Agreement and proceeding with the sale of the Lot 2 Assets. The Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs that the stay contemplated by Bankruptcy Rule 6004(h) is hereby vacated to any extent necessary to permit the immediate effectiveness of this Order. This Order shall be effective immediately upon its entry and the parties may consummate the transactions contemplated in the Asset Purchase Agreement immediately upon entry of this Order.

---

[2] The findings of fact and conclusions of law set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to these proceedings by Bankruptcy Rule 9014. To the extent any of the following findings constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

D. Proper, timely, adequate and sufficient notice of the Sale Motion, the Bid Deadline, the assumption and assignment of the Assigned Contracts (and related Cure Amounts, if any), and the Sale Hearing has been provided in accordance with the terms of the Bidding Procedures Order and Bankruptcy Code sections 102(1) and 363(b) and Bankruptcy Rules 2002, 6004, 9006, 9007 and 9014 to all persons and entities entitled to such notice. No other or further notice of the Sale Motion, the assumption and assignment of the Assigned Contracts, the Sale Hearing, or the entry of this Order is necessary or shall be required.

E. A reasonable opportunity to object or be heard regarding the relief set forth herein has been afforded to all interested persons and entities.

F. The Debtor's solicitation of competing Qualified Bids for the Lot 2 Assets was non-collusive, fair and reasonable, and conducted in good faith within the meaning of section 363(m) of the Bankruptcy Code. Lauter acted in good faith in all respects of its participation in the bidding process. Neither the Debtor nor Lauter have engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code or cause the application of, or implicate, section 363(n) of the Bankruptcy Code to the consummation of the sale of the Lot 2 Assets. The Bidding Procedures afforded a full, fair and reasonable opportunity for any Qualified Bidder to make an offer for the Lot 2 Assets.

G. The purchase price to be paid by Lauter under the Asset Purchase Agreement represents a fair and reasonable offer to purchase the Lot 2 Assets under the facts and circumstances of the Chapter 11 Case, and the form and total consideration to be realized by the Debtor pursuant to the Asset Purchase Agreement constitute fair market value. Approval of the Asset Purchase Agreement and the consummation of the transactions contemplated therein is in the best interests of the Debtor, its creditors, its estate, and all other parties in interest.

H. The Debtor has articulated a sufficient business justification under the standard set forth in *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983) and has otherwise demonstrated a sufficient basis and the existence of compelling circumstances requiring it to sell the Lot 2 Assets as contemplated in the Sale Motion, the Asset Purchase Agreement, and the terms set forth herein, and to assume and assign the Assigned Contracts to Lauter pursuant to sections 363 and 365 of the Bankruptcy Code. Such actions are an appropriate exercise of the Debtor's reasonable business judgment and are in the best interests of the Debtor, its creditors, and its estate.

I. Lauter, the Debtor and their respective professionals have complied with the Bidding Procedures Order in all material respects and in good faith.

J. The offer of Lauter and the total consideration to be realized by the Debtor pursuant to the Asset Purchase Agreement: (i) is the highest and best offer received by the Debtor for the Lot 2 Assets; (ii) is fair and reasonable; and (iii) is in the best interests of the Debtor, its creditors and its estate. The Debtor's determination that Lauter's offer constitutes the highest and best offer for the Lot 2 Assets constitutes a valid and sound exercise of the Debtor's reasonable business judgment.

K. The Asset Purchase Agreement was negotiated and entered into in good faith, based upon arm's-length negotiations and without collusion or fraud of any kind. The purchase price to be paid by Lauter was not controlled by an agreement among potential bidders. Neither Lauter nor any of its affiliates, officers, directors, managers, shareholders, or any of their respective successors or assigns is an "insider" of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code.

L. Lauter would not have entered into the Asset Purchase Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtor, its estate,

21219393.v5

and its creditors, if the sale of the Lot 2 Assets were not free and clear of all liens, claims, encumbrances and interests of any kind or nature whatsoever to the greatest extent permitted under sections 105(a) and 363 of the Bankruptcy Code and other applicable law, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, recorded or unrecorded, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, noticed or unnoticed, perfected or unperfected, allowed or disallowed, disputed or undisputed, whether accruing prior to or subsequent to the commencement of the Case, whether imposed by agreement, understanding, law, equity or otherwise.

M. The Debtor may sell the Lot 2 Assets free and clear of all such liens, claims, encumbrances and interests of any kind or nature whatsoever, to the greatest extent permitted under sections 105 and 363 of the Bankruptcy Code and other applicable law because, in each case, one or more of the standards set forth in Bankruptcy Code section 363(f) has been satisfied. Accordingly, except as otherwise set forth herein, all persons shall be forever barred, estopped, and permanently enjoined from pursuing or asserting such liens, claims, encumbrances or interests against the Lot 2 Assets, Lauter, or any of its assets, property, successors, or assigns.

N. The sale of the Lot 2 Assets to Lauter shall be a legal, valid and effective transfer and shall vest Lauter with all right, title and interest in and to the Lot 2 Assets.

O. At the closing, and subject to Lauter's payment of any applicable Cure Amounts, the Debtor may assume the Assigned Contracts, and assign each of them to Lauter or its designee pursuant to sections 363 and 365 of the Bankruptcy Code and this Order notwithstanding any anti-assignment clause or other similar provision in the Assigned Contracts. The assumption and assignment of the Assigned Contracts is in the best interest of the Debtor and its estate, creditors and other parties in interest, representing the reasonable exercise of sound and prudent business

judgment by the Debtor. Lauter and the Debtor have provided evidence of adequate assurance of future performance by Lauter or its designee under the Assigned Contracts.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. The Sale Motion is GRANTED, as set forth herein with respect to the Lot 2 Assets.

2. All objections to the relief granted herein that have not been withdrawn, waived or settled, and all reservations of rights included therein, are overruled on the merits.

3. Notice of the Sale Motion and the Sale Hearing was fair and adequate under the circumstances and complied in all respects with 11 U.S.C. § 102(1) and Bankruptcy Rules 2002, 6004, 9006, 9007 and 9014.

4. Lauter is the Successful Bidder for the Lot 2 Assets and the Asset Purchase Agreement is approved in its entirety. The sale of the Lot 2 Asset to Lauter, as contemplated in the Sale Motion and Asset Purchase Agreement, is approved pursuant to sections 105(a) and 363 of the Bankruptcy Code. The Debtor and its officers, directors, employees and agents are hereby authorized to take such actions as are necessary to consummate the sale of the Lot 2 Assets as contemplated in the Asset Purchase Agreement, and in connection therewith, are hereby authorized to execute and deliver any agreements, instruments and documents that may be necessary to implement and effectuate the provisions of this Order and the transactions approved hereby and to take all such further actions, including making non-material amendments or modifications to the Asset Purchase Agreement, as the Debtor may in its discretion deem reasonable and beneficial to facilitate the sale of the Lot 2 Assets and the transfer of the Assigned Contracts to Lauter, all without further order of this Court. Without limiting the generality of the foregoing, the Debtor is authorized, in its discretion and in the exercise of its business judgment, to negotiate and enter into

(i) the transition services agreement contemplated in Section 6.13 of the Asset Purchase Agreement, and (ii) the Real Estate Purchase And Sale Agreement contemplated in Section 6.14 of the Asset Purchase Agreement (and in connection therewith, to terminate, sell, transfer, or assign any leasehold or other interest the Debtor may have in the real property located at 575 State Fair Boulevard, Solvay, New York), to the extent the Debtor deems entering into such agreements reasonably necessary or beneficial to facilitate the closing of the sale of the Lot 2 Assets.

5. Pursuant to sections 105(a), 363(b), 363(f), and 365 of the Bankruptcy Code, and except as otherwise provided herein, the Lot 2 Assets shall be transferred to Lauter free and clear of all liens, claims, encumbrances and interests of any kind or nature whatsoever and all such liens, claims, encumbrances and interests shall attach to the net cash proceeds of the sale received by the Debtor in the order of their priority, and with the same validity, force and effect that they now have as against the Lot 2 Assets, subject to any claims and defenses the Debtor or any other party may possess with respect thereto. Notwithstanding the foregoing, in accordance with paragraphs 8 and 28 of the *Order (i) Authorizing the Debtor, on a Final Basis, to (a) Obtain Postpetition Financing and (b) Use Cash Collateral, (ii) Granting Liens and Providing Superpriority Administrative Expense Claims to Lender, (iii) Granting Adequate Protection to Lender, (iv) Modifying the Automatic Stay, (v) and Granting Related Relief, Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507* [Docket No. 145] (the "<u>Final DIP Order</u>") and the terms of the DIP Credit Agreement (as defined in the Final DIP Order), all proceeds from the sale of the Lot 2 Assets shall be paid over to KeyBank National Association and applied first to the payment of the DIP Obligations, until repaid in full, and second to the Pre-Petition Obligations, until repaid in full.

6. Except to the extent otherwise provided in the Asset Purchase Agreement or as may have otherwise been agreed to by Lauter in writing, Lauter shall not be liable or obligated for any

liabilities or obligations of the Debtor or its estate. All persons or entities holding liens, claims, encumbrances or interests of any kind or nature with respect to the Lot 2 Assets are hereby barred, estopped, and permanently enjoined from asserting, prosecuting or otherwise pursuing such liens, claims, encumbrances or interests against Lauter, its successors or assigns, or the Lot 2 Assets. This Order is and shall be effective as a determination that all such liens, claims, encumbrances and interests shall be, and are, without further action by any person or entity, released with respect to the Lot 2 Assets as of the date they are sold to Lauter.

7. If any person or entity that has filed financing statements, mortgages, mechanics' liens, lis pendens or other documents or agreements evidencing any lien, claim, encumbrance or interest in the Lot 2 Assets (except with respect to any Assumed Liabilities as set forth in the Asset Purchase Agreement) shall not have delivered to the Debtor prior to closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction or other releases of such lien, claim, encumbrance or interest, then, only with regard to the Lot 2 Assets being acquired by Lauter pursuant to the Asset Purchase Agreement or this Order, Lauter is hereby authorized to file, register or otherwise record a certified copy of this Order (and file any UCC-3 termination statements) which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of such Claims. This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state or local government agency, department or office.

8. Each and every federal, state and local government agency or department and all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds and other similar persons are hereby directed to accept any and all documents and

instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement and this Order.

9. Lauter is purchasing the Lot 2 Assets under the terms of the Asset Purchase Agreement in good faith and is therefore entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code, including, without limitation, in the event that this Order is modified or reversed on appeal.

10. The provisions of 11 U.S.C. § 363(n) have not been violated, and the transfer of the Lot 2 Assets shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and all other applicable law and no damages may be assessed against Lauter or any other party pursuant to section 363(n) of the Bankruptcy Code.

11. Pursuant to sections 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the closing and Lauter's payment of any applicable Cure Amounts, the Debtor's assumption and assignment to Lauter of the Assigned Contracts is hereby approved, and the requirements of section 365(b)(1) of the Bankruptcy Code with respect thereto are hereby deemed satisfied.

12. The Debtor is hereby authorized, in accordance with sections 105(a) and 365 of the Bankruptcy Code, to (a) assume and assign to Lauter, effective upon the Closing, the Assigned Contracts free and clear of all liens, claims, encumbrances, or interests of any kind or nature whatsoever, and (b) execute and deliver to Lauter such agreements, documents or other instruments as may be necessary to sell, assign, transfer, convey and deliver the Assigned Contracts to Lauter.

13. The Assigned Contracts shall be transferred to, and remain in full force and effect for the benefit of, Lauter in accordance with their respective terms, notwithstanding any provision in any such Assigned Contract that prohibits, restricts or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Debtor shall be relieved from any further liability with respect to the Assigned Contracts following such assignment to Lauter.

14. All defaults or other obligations of the Debtor under any Assigned Contract (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be deemed cured upon payment by Lauter at the closing, of the Cure Amount with respect to each Assigned Contract.

15. Upon the closing, Lauter shall be deemed to be substituted for the Debtor as a party to the applicable Assigned Contracts, and the Debtor shall be relieved from all liabilities with respect to such Assigned Contracts arising after the closing.

16. Lauter has provided adequate assurance of its future performance under the Assigned Contracts within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

17. The provisions of Bankruptcy Rule 6004(h) shall not apply to stay consummation of the transactions contemplated by the Asset Purchase Agreement, and the Debtor and Lauter are hereby authorized to consummate such transactions upon entry of this Order.

18. This Order shall be binding in all respects upon Lauter (together with its directors, officers, principals, affiliates, successors and assigns), the Debtor, all creditors of and holders of equity interests in the Debtor (whether known or unknown), any holders of liens, claims, encumbrances or interests in the Lot 2 Assets, all parties in interest in this Chapter 11 Case, and

any subsequent trustees appointed in the Chapter 11 Case or upon a conversion to chapter 7 under the Bankruptcy Code.

19. Nothing set forth in this Order shall alter or affect the Committee's ability to assert a Challenge (as that term is defined in the Order Granting the Debtor's Motion for Interim and Final Orders Pursuant to Sections, 105, 361, 362, 363, 364 and 507 of the United States Bankruptcy Code, Rules, 2002, 4001, 6003, and 9014 of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rule 4001-2 (A) Authorizing the Debtor to Obtain Secured Post Petition Financing and Use Cash Collateral on an Emergency Basis, (B) Granting Adequate Protection, (C) Scheduling Interim and Final Hearings and (D) Granting Related Relief [Docket No. 145]. Nothing set forth in this Order shall be construed as a waiver of any right of the estate to present and/or prosecute any claims against the insiders of the Debtor.

20. Nothing in this Order or the Asset Purchase Agreement releases, nullifies, precludes, or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as the post-sale owner or operator of property after the date of entry of this Order provided, however, that Lauter shall not assume any liability to a Governmental Unit for penalties for days of violation prior to closing of the sale. Nothing in this Order or the Asset Purchase Agreement authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law. Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order.

21. Any materials at the Debtor's facility related to FRC Global that (i) are in their original packaging and have not been removed from their shipping pallets, and (ii) have not been invoiced to the Debtor, shall not be included in the Lot 2 Assets to be sold to Lauter and all rights (if any) of FRC Global and the Debtor with respect to such materials are hereby preserved.

22. The Lot 2 Assets to be sold to Lauter shall not include, nor shall there be any assumption or assignment of, that certain workers compensation insurance policy (policy no. XXXXXX8115) issued by North River, effective 10/23/24 through 10/23/25.

23. If (i) the Asset Purchase Agreement is terminated in accordance with its terms; or (ii) for any reason Lauter fails to consummate the sale in accordance with the terms of the Asset Purchase Agreement; then (x) the CIA will be deemed to be the Successful Bidder for the Lot 2 Assets, (y) the Debtor and CIA shall be authorized and directed to close the sale transaction as expeditiously as practicable upon the terms set forth in the Back-Up Asset Purchase Agreement, and (z) all findings of fact, conclusions of law, and ordering paragraphs set forth herein with respect to Lauter, the Asset Purchase Agreement and the sale of the Lot 2 Assets to Lauter, including specifically but without limitation, all findings of good faith and entitlement to protection under section 363(m) of the Bankruptcy Code, shall be deemed to apply to CIA, the Back-Up Asset Purchase Agreement and the sale of the Lot 2 Assets to CIA, and the Debtor shall be authorized, but not required, to seek a further order of the Court to that effect.

24. The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to implement the terms and provisions of this Order.

25. This Court shall retain jurisdiction to adjudicate any dispute, issue, or other matter arising in connection with the sale of the Lot 2 Assets or the implementation of this Order.

26. Any appeal seeking to enjoin or stay consummation of the sale of the Lot 2 Assets shall be subject to the appellant depositing or posting a bond in an amount equal to the purchase price to be paid by Lauter pursuant to the Asset Purchase Agreement (without adjustment), pending the outcome of the appeal.

27. Pursuant to the *Order Authorizing the Employment and Retention of Calibre Group LLC as the Asset Sale Advisor to the Debtor* [Docket No. 155] (the "Calibre Retention Order"), the Debtor is authorized to pay Calibre Group LLC from the proceeds of the Sale Transaction, a Sale Bonus (as such term is defined in the Calibre Retention Order) in the amount of $500,000, less any Sale Bonus, Monthly Payments and Prepetition Retainer Payment previously paid to Calibre, without further order of the Court.

28. The Debtor is authorized and empowered to take all actions necessary to effectuate the relief granted pursuant to this Order.

# # #